FILED
CLERK, U.S. DISTRICT COURT

NOV 14 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIXON JACKSON, | ) NO. CV 08-3481-VBF(E) |
| Petitioner, | ) |
| v. | ) ORDER ADOPTING FINDINGS, |
| J.W. HARTLEY, Warden, | ) CONCLUSIONS AND RECOMMENDATIONS OF |
| Respondent. | ) UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///
///
///
///

1      IT IS FURTHER ORDERED that the Clerk serve copies of this Order,
2 the Magistrate Judge's Report and Recommendation and the Judgment
3 herein by United States mail on Petitioner and counsel for Respondent.
4
5      LET JUDGMENT BE ENTERED ACCORDINGLY.
6
7      DATED: _____Nov 7_____, 2008.

                     /s/ Valerie Baker Fairbank
                     VALERIE BAKER FAIRBANK
                     UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIXON JACKSON, | ) NO. CV 08-3481-VBF(E) |
| Petitioner, | ) |
| v. | ) REPORT AND RECOMMENDATION OF |
| J.W. HARTLEY, Warden, | ) UNITED STATES MAGISTRATE JUDGE |
| Respondent. | ) |

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

## PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on May 28, 2008, accompanied by a supporting

Memorandum ("Pet. Mem.")[1] and exhibits. Petitioner alleges, among other things, that the California Board of Prison Terms, now the California Board of Parole Hearings ("Board"),[2] violated Petitioner's rights by failing to provide parole consideration hearings to Petitioner. Respondent filed a Motion to Dismiss on June 23, 2008. Petitioner filed an Opposition to the Motion to Dismiss on July 9, 2008.

## PROCEDURAL BACKGROUND

In 1992, Petitioner pled nolo contendere to five counts of forcible rape in violation of California Penal Code section 261(a)(2), a crime carrying an upper term sentence of eight years under California Penal Code section 264(a) (Pet. Mem., p. 3; Motion to Dismiss, Ex. 1). Pursuant to California's Determinate Sentencing Law ("DSL"), California Penal Code section 1170, the court sentenced Petitioner to five consecutive upper term sentences of eight years, for a total determinate sentence of forty years (see Motion to Dismiss, Exs. 1, 2).

California Penal Code section 3000(b)(1) provides, in pertinent part, that at the expiration of a determinate sentence the inmate shall be released on parole for a period not exceeding three years.

---

[1] Petitioner's Memorandum contains various sections which are separately paginated. The Court refers to the Memorandum by section title and page number.

[2] On July 1, 2005, the California Board of Prison Terms was abolished and replaced by the California Board of Parole Hearings. See Cal. Penal Code § 5075(a).

Petitioner's current projected release date is May 18, 2020, and his maximum release date is May 17, 2031 (Motion to Dismiss, Ex. 2).

Petitioner alleges that, in July of 1992, Petitioner filed an application for a certificate of probable cause, alleging Petitioner was denied the effective assistance of counsel in his criminal proceedings (Pet. Mem., "Procedural History," p. 1). The Superior Court allegedly denied the application (id.). Petitioner allegedly sought review in the California Court of Appeal, but that court allegedly denied relief, assertedly based on Petitioner's failure to allege sufficient facts showing an entitlement to relief (id.).[3] Petitioner alleges that he thereafter sought to learn how to state the required facts (id.). In December of 2000, allegedly having obtained sufficient information, Petitioner filed a habeas corpus petition in the Superior Court alleging, inter alia, prosecutorial misconduct (id.; "Procedural History," pp. 1-2). The Superior Court denied this petition in 2001 (id.; "Procedural History," p. 2). Petitioner alleges that he did not file any appeals related to that petition due to "some debilitating mental illness" (id.).

On November 15, 2006, Petitioner submitted an "Inmate/Parolee Appeal Form" to the prison appeals office, requesting a parole

---

[3] Petitioner's Court of Appeal petition is not in the record. However, the Court takes judicial notice of the record in Dixon v. Superior Court, California Court of Appeal case number B071808, available on the California courts' website at www.courtinfo.ca.gov. See Mir v. Little Company of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records). The record for that case indicates that the petition was filed on December 4, 1992, and was denied summarily.

consideration hearing and the setting of a parole release date, and stating that Petitioner assertedly should receive a release date sometime in 2007[4] (Petition, Exhibits, pp. 1-2). The appeal was returned to Petitioner with the notation that action sought was under the jurisdiction of the Board, and that Petitioner should send his request to the Board (Petition, Exhibits, p. 3).

On December 28, 2006, Petitioner filed a petition for writ of habeas corpus in the Superior Court, alleging, inter alia, that: (1) the sentencing court allegedly imposed mandatory parole without informing Petitioner how he was to be paroled; (2) the imposition of a three-year period of mandatory parole effectively required Petitioner to serve a forty-three-year sentence instead of a forty-year sentence, allegedly in violation of Petitioner's plea agreement; and (3) California inmates sentenced pursuant to the DSL, such as Petitioner, assertedly were entitled to the same procedures for a parole consideration hearing and the setting of a release date as prisoners sentenced under California's Indeterminate Sentencing Law ("ISL") (Motion to Dismiss, Ex. 3). Sometime after January of 2007, Petitioner filed a habeas corpus petition in the Superior Court challenging his sentence under Cunningham v. California, 539 U.S. 270 (2007) ("Cunningham") (Pet. Mem., "Procedural History," p. 2). The Superior Court denied the Cunningham petition (id.). On July 13, 2007, the Superior Court denied the December 28, 2006 petition on the grounds that: (1) the issue whether Petitioner had the right to a parole hearing for early release could or should have been raised on

---

[4] i.e., approximately fifteen years into his forty-year determinate sentence.

appeal; (2) Petitioner provided no justification for the delay in asserting his claim; (3) the petition was successive (apparently to the Cunningham petition); and (4) there was no legal or constitutional support for Petitioner's contention, because inmates sentenced to indeterminate sentences were not similarly situated to those sentenced under the DSL (Motion to Dismiss, Ex. 4).

Petitioner filed a habeas corpus petition in the California Court of Appeal on July 19, 2007, which that court denied summarily on August 7, 2007 (Motion to Dismiss, Exs. 5, 6). Petitioner filed a habeas corpus petition in the California Supreme Court on September 21, 2007, which that court denied summarily on March 19, 2008 (Motion to Dismiss, Exs. 7, 8).

**STATE LAW GOVERNING PAROLE FOR DSL INMATES**

In In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417, 104 P.3d 783 (2005), cert. denied, 546 U.S. 844 (2005), the California Supreme Court described the evolution of California's different treatment of DSL and ISL inmates with respect to parole:

> For decades before 1977, California employed an "indeterminate" sentencing system for felonies. The court imposed a statutory sentence expressed as a range between a minimum and maximum period of confinement - often life imprisonment - the offender must serve. An inmate's actual period of incarceration within this range was under the exclusive control of the parole authority, which focused,

primarily, not on the appropriate punishment for the original offense, but on the offender's progress toward rehabilitation. During most of this period, parole dates were not set, and prisoners had no idea when their confinement would end, until the moment the parole authority decided they were ready for release. (See People v. Jefferson (1999) 21 Cal.4th 86, 94-95, 86 Cal.Rptr.2d 893, 980 P.2d 441 (Jefferson); Cassou & Taugher, Determinate Sentencing in California: The New Numbers Game (1978) 9 Pacific L.J. 5, 6-16 (Cassou & Taugher).)

The DSL, adopted in 1976, largely abandoned this system. The DSL implemented the Legislature's finding that "the purpose of imprisonment for crime is punishment," a goal "best served by terms proportionate to the seriousness of the offense," with provision for sentence "uniform[ity]" for similar offenses. (§ 1170, subd. (a)(1).)

Under the DSL, most felonies are now subject, in the alternative, to three precise terms of years (for example, two, three, or four years, or three, five, or seven years). The court selects one of these alternatives (the lower, middle, or upper term) when imposing the sentence. (§ 1170, subds. (a)(3), (b); see Jefferson, supra, 21 Cal.4th 86, 95, 86 Cal.Rptr.2d 893, 980 P.2d 441.) The offender must serve this entire term, less applicable sentence credits, within prison walls, but then must be released for a further period of supervised parole. (§ 3000, subd. (b); see Cassou &

Taugher, supra, 9 Pacific L.J. 5, 26.)

However, certain serious offenders, including "noncapital" murderers (i.e., those murderers not punishable by death or life without parole), remain subject to indeterminate sentences. These indeterminate sentencees may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement. (See Jefferson, supra, 21 Cal.4th 86, 92-93, 86 Cal.Rptr.2d 893, 980 P.2d 441.) As under prior law, life inmates' actual confinement periods within the statutory range are decided by an executive parole agency. This agency, an arm of the Department of Corrections, is now known as the BPT.[5] (See § 3040.)

Section 3041 addresses how the Board is to make parole decisions for indeterminate life inmates. Subdivision (a) provides that, one year before the prisoner's minimum eligible parole date, a Board panel shall meet with the inmate, "shall normally set a parole release date," and shall do so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." The release date also must "comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." The Board must "establish

---

[5] Now the California Board of Parole Hearings. See fn. 2, ante.

criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime . . . and other factors in mitigation or aggravation of the crime."

. . .

However, subdivision (b) of section 3041 specifies the circumstances under which a date for an indeterminate life inmate's release on parole need not be fixed. Subdivision (b) provides that a parole release date shall be set "unless [the Board] determines" that the inmate is presently unsuitable for the fixing of a parole date, i.e., that "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." . . .

The regulations governing murderers serving indeterminate life sentences have long provided that determination of an individual inmate's suitability for parole under section 3041, subdivision (b) must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a). As currently worded, the regulations specify that "[t]he panel shall first determine whether the life prisoner is suitable for

1 release on parole. Regardless of the length of time served,
2 a life prisoner shall be found unsuitable for and denied
3 parole if in the judgment of the panel the prisoner will
4 pose an unreasonable risk of danger to society if released
5 from prison." (Cal.Code Regs., tit. 15, § 2402(a), italics
6 added.)

8 In re Dannenberg, 34 Cal. 4th at 1077-80 (footnotes renumbered;
9 italics omitted).

11     A DSL sentence includes a mandatory three-year parole term which
12 follows: (1) the expiration of a term of imprisonment for a year and a
13 day;[6] (2) the expiration of a determinate term imposed pursuant to
14 California Penal Code section 1170; or (3) the expiration of a term
15 reduced by earned credits. See Cal. Penal Code § 3000(b)(1). "Under
16 the Determinate Sentencing Law, parole is not part of the prison term,
17 but is required to be served after release from prison." Reed v.
18 Kernan, 2008 WL 906098 at *6 (E.D. Cal. Apr. 2, 2008), adopted, 2008
19 WL 2388386 (E.D. Cal. June 6, 2008) (citing People v. Jefferson, 21
20 Cal. 4th 86, 95-96, 86 Cal. Rptr. 2d 893, 980 P.2d 441 (1999); see
21 also Consiglio v. Hickman, 2008 WL 682645 at *1 (E.D. Cal. Mar. 10,
22 2008) ("parole and imprisonment are separate components of a sentence
23 under the Determinate Sentencing Law").

---

[6] Contrary to Petitioner's apparent assertion (see Pet. Mem., "Necessity for Evidentiary Hearing/Order to Show Cause," p. 5), the "year and a day" provision of Penal Code section 3000(b)(1) does not fix a DSL inmate's minimum period of confinement at a year and a day, and does not apply to Petitioner, who received a sentence much longer than a year and a day.

"The Board . . . has no discretion to grant or withhold parole to a prisoner who has served a determinate term. The prisoner neither applies for nor has the right to reject release on parole." People v. Burgener, 41 Cal. 3d 505, 529 n.12, 224 Cal. Rptr. 112, 714 P.2d 1251 (1986), overruled on other grounds, People v. Reyes, 19 Cal. 4th 743, 80 Cal. Rptr. 2d 734, 968 P.2d 445 (1998); see also Terhune v. Superior Court, 65 Cal. App. 4th 864, 76 Cal. Rptr. 2d 841 (1998); McCarthy v. Superior Court, 191 Cal. App. 3d 1023, 236 Cal. Rptr. 833 (1987). The statutory provisions governing suitability hearings do not apply to DSL prisoners. See Cal. Penal Code § 3041(a) (provision applicable "[i]n the case of any inmate sentenced pursuant to any provision of law other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2" (emphasis added).

### PETITIONER'S CONTENTIONS

The Petition is not a model of clarity. The form Petition contains a list of Petitioner's grounds for relief that differs from the list of Petitioner's grounds for relief contained in the Memorandum attached to the Petition and from other claims alleged in the Memorandum. The Court construes the Petition to assert the following claims:

1. The sentencing court allegedly imposed a mandatory three-year parole term, assertedly implying that Petitioner would be entitled to release on parole, but allegedly without disclosing "what particular rights or real interest in parole the petitioner was entitled too [sic]" (Pet. Mem., Introduction, p. 3; "Procedural History," p. 5);

2.  The court and the Board allegedly failed to disclose "essential facts that notify the plaintiff [sic] of his ineligibility or eligibility for parole" (Pet., p. 5);

3.  The Board's alleged failure to provide Petitioner with parole consideration hearings assertedly violated Petitioner's plea agreement (Pet., p. 5; Pet. Mem., Introduction, p. 3; "Procedural History," pp. 5, 6);

4.  The Board assertedly denied Petitioner his alleged rights to a parole suitability hearing and the setting of an early release date, assertedly in violation of Due Process, the Equal Protection Clause and the Eighth Amendment (Pet. Mem., "Procedural History," p. 5; "Deliberate Indifference," pp. 1-3);

5.  The Board allegedly enforces an alleged "no parole policy" against DSL inmates, assertedly by assuming jurisdiction over a DSL inmate who has completed his or her term of imprisonment (Pet., p. 6);

6.  The Board has interpreted parole statutes to "administratively increase" Petitioner's sentence from 40 years to 43 years, "with a potential increase to 44 years," allegedly in violation of Petitioner's asserted Due Process right in early release (Pet. Mem., Introduction, p. 3);

7.  The Board assertedly violates the separation of powers doctrine by allegedly asserting absolute power over parole matters (Pet. Mem., "Court Standard of Review," p. 3);

8. The Board allegedly imposes involuntary servitude on an inmate by compelling the inmate to serve a parole term after the completion of his or her prison term (Pet. Mem., "California Parole Practices," pp. 1-8);

9. The mandatory three-year parole period allegedly constituted a "statutory enhancement," the imposition of which assertedly violated <u>Cunningham</u> because the underlying facts allegedly were not charged or proved beyond a reasonable doubt (Pet. Mem, "Statutorial Enhancements," pp. 1-5; Pet. Mem., "Conclusion," p. 5); and

10. The state courts allegedly violated Due Process, state law, court rules and Petitioner's <u>Faretta</u>[7] rights, assertedly by "abbreviating" Petitioner's habeas rights (Pet., p. 6; Pet. Mem., "Procedural History," p. 5).

### RESPONDENT'S CONTENTIONS

Respondent contends:

1. The Petition allegedly is untimely;

2. The doctrine of procedural default allegedly bars Petitioner's claims;

///
///

---

[7] <u>Faretta v. California</u>, 422 U.S. 806 (1975).